**BRODSKY SMITH**
Evan J. Smith, Esquire (SBN 242352)
esmith@brodskysmith.com
Ryan P. Cardona, Esquire (SBN 302113)
rcardona@brodskysmith.com
9595 Wilshire Boulevard, Suite 900
Beverly Hills, CA 90212
Phone: (877) 534-2590
Facsimile: (310) 247-0160

*Attorneys for Plaintiff*

UNITED STATES DISTRICT COURT

NORTHERN DISTRICT OF CALIFORNIA

| | |
|---|---|
| MICHELENE MCMANUS,<br><br>                    Plaintiff,<br><br>         vs.<br><br>COHBAR, INC., DAVID GREENWOOD, ALBION J. FITZGERALD, CAROL NAST, MISHA PETKEVICH, JOSEPH J. SARRET, STEPHANIE TOZZO, and JOANNE YUN,<br><br>                    Defendants. | Case No.:  3:23-cv-3495<br><br>**Complaint For:**<br><br>(1) Violation of § 14 (a) of the Securities Exchange Act of 1934<br>(2) Violation of § 20(a) of the Securities Exchange Act of 1934<br><br>**JURY TRIAL DEMANDED** |

Plaintiff, Michelene McManus ("Plaintiff"), by and through her attorneys, alleges upon information and belief, except for those allegations that pertain to her, which are alleged upon personal knowledge, as follows:

**SUMMARY OF THE ACTION**

1.      Plaintiff brings this stockholder action against CohBar, Inc. ("CohBar" or the "Company") and the Company's Board of Directors (the "Board" or the "Individual Defendants," collectively with the Company, the "Defendants"), for violations of Sections 14(a) and 20(a) of

- 1 -
COMPLAINT

the Securities and Exchange Act of 1934 (the "Exchange Act") as a result of Defendants' efforts to merge with Morphogenesis, Inc. ("Morphogenesis" or "Parent"), through merger vehicle Chimera MergeCo, Inc., a wholly owned subsidiary of CohBar ("Merger Sub") as a result of an unfair process, and to enjoin an upcoming stockholder vote on a proposed merger transaction (the "Proposed Transaction").

2. The terms of the Proposed Transaction were memorialized in a May 23, 2023 filing with the Securities and Exchange Commission ("SEC") on Form 8-K attaching the definitive Agreement and Plan of Merger (the "Merger Agreement"). Under the terms of the Merger Agreement, each existing share of Morphogenesis common stock will be converted into the right to receive newly issued shares of CohBar common stock. Post-close, current CohBar stockholders are expected to own only approximately 15% of the Company. Additionally, as part of the Proposed Transaction, CohBar's pre-merger stockholders and certain warrant holders will receive a contingent value right ("CVR") for each outstanding share of CohBar common stock held. At the closing of the merger, the corporate name of CohBar will be changed to "TυHURA Biosciences, Inc."

3. Thereafter, on July 3, 2023, the Company filed a Form S4 attaching the Registration Statement (the "Registration Statement") with the SEC in support of the Proposed Transaction.

4. The Proposed Transaction is unfair for a number of reasons. Significantly, it appears as though the Board has entered into an agreement which will provide no consideration to any Company stockholder whatsoever, other than the dilution of their shares and a non-guaranteed CVR.

5. The Registration Statement is materially deficient, depriving Plaintiff of the information necessary to make an intelligent, informed, and rational decision of whether to vote

in favor of the Proposed Transaction, and is thus in violation of the Exchange Act. As detailed below, the Registration Statement omits and/or misrepresents material information concerning, among other things: (a) the sales process and in particular certain conflicts of interest for management; (b) the financial projections for CohBar and Morphogenesis, provided by CohBar management to the Board and the Board's financial advisor Ladenburg Thalmann & Co., Inc. ("Ladenburg"); (c) the data and inputs underlying the financial valuation analyses, if any, that purport to support the fairness opinion created by Ladenburg, if any, provided to the Company and the Board.

6. Absent judicial intervention, the Proposed Transaction will be consummated, resulting in irreparable injury to Plaintiff. This action seeks to enjoin the Proposed Transaction.

**PARTIES**

7. Plaintiff is a citizen of New York and, at all times relevant hereto, has been a CohBar stockholder.

8. Defendant CohBar is a clinical stage biotechnology company and develops mitochondria and peptides-based therapeutics for the treatment of chronic and age-related diseases. It develops CB4211, a therapeutic that is in Phase 1a/1b clinical trial for the treatment of nonalcoholic steatohepatitis and obesity; and CB5138 Analogs, which is in preclinical study to treat idiopathic pulmonary fibrosis and other fibrotic diseases. The Company is incorporated in Delaware and has its principal place of business at 1455 Adams Drive, Suite 1308, Menlo Park, CA 94025. Shares of CohBar common stock are traded on the Nasdaq Stock Exchange ("Nasdaq") under the symbol "CWBR".

9. Defendant David Greenwood ("Greenwood") has been a Director of the Company at all relevant times. In addition, Defendant Greenwood serves as the Chairman of the Company Board.

10. Defendant Albion J. Fitzgerald ("Fitzgerald") has been a director of the Company at all relevant times.

11. Defendant Carol Nast ("Nast") has been a director of the Company at all relevant times.

12. Defendant Misha Petkevich ("Petkevich") has been a director of the Company at all relevant times.

13. Defendant Joseph J. Sarret, M.D., J.D. ("Sarret") has been a director of the Company at all relevant times. In addition, Defendant Sarret serves as the Company's Chief Executive Officer ("CEO").

14. Defendant Stephanie Tozzo, Ph.D. ("Tozzo") has been a director of the Company at all relevant times.

15. Defendant Joanne Yun, Ph.D. ("Yun") has been a director of the Company at all relevant times.

16. Defendants identified in ¶¶ 9 - 15 are collectively referred to as the "Individual Defendants."

17. Non-Party Parent is a clinical-stage company that develops cell and gene therapies. Parent is a private company and reincorporated in Delaware from Florida on April 27, 2023. Parent announced on March 28, 2023 that it had entered into a definitive asset purchase agreement, in a stock for stock transaction, to acquire TυHURA's novel antibody-drug conjugates ("ADC"s) targeting myeloid-derived suppressor cells to modulate tumor microenvironment

immunosuppression. Through this acquisition, Morphogenesis now has exclusive worldwide license rights to TυHURA's patents and patented technologies related to the ADC platform.

18. Non-Party Merger Sub is a wholly owned subsidiary of Company created to effectuate the Proposed Transaction.

## JURISDICTION AND VENUE

19. This Court has subject matter jurisdiction pursuant to Section 27 of the Exchange Act (15 U.S.C. § 78aa) and 28 U.S.C. § 1331 (federal question jurisdiction) as Plaintiff alleges violations of Sections 14(a) and 20(a) of the Exchange Act. This action is not a collusive one to confer jurisdiction on a court of the United States, which it would not otherwise have. The Court has supplemental jurisdiction over any claims arising under state law pursuant to 28 U.S.C. § 1367.

20. Personal jurisdiction exists over each defendant either because the defendant conducts business in or maintains operations in this District or is an individual who is either present in this District for jurisdictional purposes or has sufficient minimum contacts with this District as to render the exercise of jurisdiction over defendant by this Court permissible under traditional notions of fair play and substantial justice.

21. Venue is proper in this District pursuant to 28 U.S.C. § 1391, because each of the Individual Defendants, as Company officers or directors, has extensive contacts within this District; for example, the Company maintains its headquarters in this District.

## SUBSTANTIVE ALLEGATIONS

*Company Background*

22. CohBar, Inc. is a clinical-stage biotechnology company and develops mitochondria and peptides-based therapeutics for the treatment of chronic and age-related diseases. While extensive work has been conducted on the nuclear genome, CohBar was the first to discover

potential therapeutics sourced from the mitochondrial genome. It develops CB4211 and CB5138 Analogs.

23. CB4211 is a therapeutic that is in Phase 1a/1b clinical trial for the treatment of nonalcoholic steatohepatitis and obesity. It is a novel and improved analog of MOTS-c, a naturally occurring mitochondrial derived peptide (MDP) that plays a key role in regulating metabolism. CB4211 has resulted in significant impacts on NASH and obesity in multiple preclinical models; has been shown in a clinical study to significantly reduce ALT and AST, key biomarkers of liver damage, as well as glucose levels compared to placebo; and resulted in a trend towards lower body weight compared to placebo in a clinical trial.

24. CB5138 Analogs research is in preclinical study to treat idiopathic pulmonary fibrosis and other fibrotic diseases. CB5138 Analogs have been shown to: decrease expression of fibrosis biomarkers in co-cultures of lung cells and fibroblasts; decrease Ashcroft fibrosis score and lymphocytes in lung fluid after 21 days in prophylactic mouse model; demonstrate positive effects on all study outcomes in a therapeutic mouse model, including significantly reduced lung fibrosis as evidenced by decreases in the Ashcroft Score, fibrosis-related changes in lung weight, collagen deposition in lung tissue and collagen secretion into lung fluid; and demonstrate significant reductions in lung fluid levels of a variety of pro-inflammatory cytokines and inflammatory cells in a therapeutic mouse model.

25. The Company's last performance press release of 2022, revealing performance results preceding the announcement of the Proposed Transaction, indicated clinical progress. Speaking on the results, Defendant and CEO Dr. Sarret stated, "I'm pleased with the team's performance during the third quarter of 2022 in advancing our top priorities, including improving the formulation of CB5138-3, our product candidate for IPF."

26. Dr. Sarret continued, noting the Company's likelihood for future success, stating, "We continue to operate the company in a prudent financial manner, and we completed a reverse stock split, which was a necessary step to regain compliance with Nasdaq and enable potential access to institutional capital. Looking ahead, we are prioritizing activities that will support the planned clinical development of our IPF program and we look forward to communicating additional progress in the near future."

27. The sustained clinical results are not an anomaly, but rather, are indicative of a trend of continued future potential success by CohBar.

28. Despite this upward trajectory, the Individual Defendants have caused CohBar to enter into the Proposed Transaction without providing requisite information to CohBar stockholders such as Plaintiff.

**The Flawed Sales Process**

29. As detailed in the Registration Statement, the process deployed by the Individual Defendants was flawed and inadequate, was conducted out of the self-interest of the Individual Defendants and was designed with only one concern in mind – to effectuate a sale of the Company by any means possible.

30. Notably, the Registration Statement fails to disclose adequate reasoning as to why the Board would agree to a deal in which shareholders' interests would be diluted, with no consideration given except for a non-guaranteed CVR payment.

31. The Registration Statement also fails to indicate whether a committee of independent directors was formed to review the Proposed Transaction and, if so, the identity of the directors who sat on said committee and what powers the committee had to evaluate the transaction, including whether the committee was empowered to veto a potential transaction not

in the best interests of shareholders. This is especially relevant given that one of the board of directors, Defendant Fitzgerald, voted against the Proposed Transaction and requested the vote be put to the Company's stockholders. On the other hand, if a committee was not formed, the Registration Statement fails to adequately disclose why a committee of disinterested directors was not formed.

32. Moreover, the Registration Statement is silent as to the nature of the confidentiality agreement entered into between the Company and Morphogenesis, whether this agreement differed from any other agreement with potentially interested third parties not specifically mentioned by the Registration Statement, if so, in all specific manners, including all specific terms of any such included "don't-ask, don't-waive" provisions or standstill provisions contained therein, including, all specific conditions, if any, under which such provisions would fall away.

33. It is not surprising, given this background to the overall sales process, that it was conducted in an inappropriate and misleading manner.

***The Proposed Transaction***

34. On May 23, 2023, CohBar and Morphogenesis issued a press release announcing the Proposed Transaction. The press release stated, in relevant part:

> **MENLO PARK, Calif. and TAMPA, Fla., May 23, 2023 (GLOBE NEWSWIRE) --** CohBar, Inc. (NASDAQ: CWBR) ("CohBar" or the "company") and Morphogenesis, Inc. ("Morphogenesis"), a privately-held Phase 2/3 clinical-stage biotechnology company developing novel personalized cancer vaccines and tumor microenvironment modulators to overcome resistance to current immunotherapies, today announced that they have entered into a definitive agreement for an all-stock transaction forming a company combining expertise and resources to advance a late-stage oncology pipeline. The combined company will focus on advancing Morphogenesis' two technologies that seek to overcome the major obstacles that limit the effectiveness of current immunotherapies in treating cancer. The combined company is expected to operate under the name "TuHURA Biosciences, Inc." and to trade on The Nasdaq Capital Market ("Nasdaq"). The transaction is expected to close in the third quarter of 2023.

"Following a thorough review and evaluation, we believe merging with Morphogenesis and leveraging their late-stage pipeline of novel immuno-oncology technologies represents the best path forward for our stockholders and has the potential to deliver near and long-term value," stated Dr. Joseph Sarret, CEO of CohBar. "Our board and management team believe that the combined company will be well-positioned to develop powerful new therapies with the potential to overcome resistance to current immunotherapies, an area of significant unmet need."

Morphogenesis' technologies, which can be used to target large unmet medical needs across a variety of cancers, include:

- **Immune Fx (IFx) Personalized Cancer Vaccines**: IFx is designed to prime and activate an innate immune response against patient-specific tumor antigens, overcoming primary resistance to checkpoint inhibitors. Morphogenesis is currently preparing for a single Phase 2/3 registration trial of its lead personalized cancer vaccine, IFx-Hu2.0, as an adjunct to Keytruda® (pembrolizumab) in first line treatment for advanced Merkel Cell Carcinoma (MCC). This study is expected to be conducted under a Special Protocol Assessment (SPA) agreement with the FDA and to commence in early 2024. Additionally, Morphogenesis is advancing IFx-Hu3.0, its mRNA vaccine, toward IND-enabling studies in 2024 for the treatment of aggressive diffuse large B-cell lymphoma (DLBCLs).
- **Tumor Microenvironment (TME) Modulators**: TME Modulators are designed to address one of the primary causes of acquired resistance to immunotherapies, including checkpoint inhibitors or cellular therapies like CAR-T. Leveraging its new class of novel bi-functional antibody drug conjugates (ADCs), Morphogenesis is targeting a recently identified delta receptor on myeloid derived suppressor cells (MDSCs). MDSCs comprise a major component of cells in the tumor microenvironment and are responsible for suppressing the immune system's attack against the tumor. Morphogenesis is constructing several MDSC targeted, bi-functional ADCs for in vitro and in vivo characterization, targeting lead selection by the end of 2024.

"I'm extremely pleased to announce this proposed merger with CohBar, which comes at a pivotal time for Morphogenesis," said Dr. James Bianco, Chief Executive Officer of Morphogenesis. "We are gearing up to initiate our Phase 2/3 registration study for IFx-Hu2.0 early next year. Our technology platforms have the potential to significantly increase the number of cancer patients that respond to immunotherapies, such as checkpoint inhibitors. This transaction serves as a significant next step in the advancement of our important mission."

**About the Proposed Transaction, Management & Organization**

Under the terms of the merger agreement, subject to stockholder approval, each holder of CohBar common stock as of immediately prior to the closing of the transaction will be issued a dividend equal to approximately 3.30 shares of CohBar common stock on or about the effective date of the merger. On a pro forma basis taking into account the concurrent financing described below and the issuance of the stock dividend, pre-merger CohBar equityholders are expected to collectively own approximately 15% and pre-merger Morphogenesis equityholders are expected to collectively own approximately 77%, respectively, of the common stock of CohBar on a pro forma basis (assuming the exercise of all in-the-money warrants and options then outstanding).

Upon execution of the merger agreement, CohBar also entered into a stock purchase agreement with an affiliate of an existing investor in Morphogenesis for a $15 million private placement that is expected to close concurrently with the closing of the proposed merger. The proceeds from the private placement will be used to fund the advancement of the combined company's immunotherapy-focused development pipeline, with an anticipated cash runway through 2024. Immediately following the closing of the merger and the closing of the private placement, the shares issued in the private placement are anticipated to represent approximately 9% of the common stock of CohBar on a pro forma basis (assuming the exercise of all in-the-money warrants and options then outstanding).

Additionally, pre-merger CohBar stockholders and certain warrant holders of record will receive a contingent value right (CVR). Holders of the CVR will be entitled to receive certain payments from proceeds received by CohBar, if any, related to the disposition of CohBar's legacy mitochondrial assets for a period of three years following the closing of the proposed merger.

The merger agreement has been approved by the boards of directors of both companies and is subject to stockholder approval of both companies and other customary closing conditions. The proposed merger is expected to close in the third quarter of 2023.

Following the merger, the combined company will be headquartered in Tampa, Florida, and the executive officers are expected to be James Bianco, MD as Chief Executive Officer, and Dan Dearborn, CPA as Chief Financial Officer. The merger agreement provides that the board of directors of the combined company will be composed of seven members, with five members initially designated by Morphogenesis and two members initially designated by CohBar.

Ladenburg Thalmann & Co., Inc. is acting as the exclusive financial advisor and Gibson, Dunn & Crutcher LLP is acting as legal counsel to CohBar. H.C. Wainwright & Co. is acting as the exclusive financial advisor and Foley & Lardner LLP is acting as legal counsel to Morphogenesis.

*Potential Conflicts of Interest*

35.     The breakdown of the benefits of the deal indicate that CohBar insiders are the primary beneficiaries of the Proposed Transaction, not the Company's public stockholders such as Plaintiff.  The Board and the Company's executive officers are conflicted because they will have secured unique benefits for themselves from the Proposed Transaction not available to Plaintiff as a public stockholder of CohBar.

36.     For example, the Registration Statement also fails to adequately disclose communications regarding post-transaction employment. Communications regarding post-transaction employment during the negotiation of the underlying transaction must be disclosed to stockholders. This information is necessary for Plaintiff to understand potential conflicts of interest of management and the Board, as that information provides illumination concerning motivations that would prevent fiduciaries from acting solely in the best interests of the Company's stockholders.

37.     Thus, while the Proposed Transaction is not in the best interests of CohBar, Plaintiff, or Company stockholders, it will produce lucrative benefits for the Company's officers and directors.

*The Materially Misleading and/or Incomplete Registration Statement*

38.     On July 3, 2023, the CohBar Board caused to be filed with the SEC a materially misleading and incomplete Registration Statement that, in violation the Exchange Act, failed to provide Plaintiff in her capacity as a Company stockholder with material information and/or provides materially misleading information critical to the total mix of information available to Plaintiff concerning the financial and procedural fairness of the Proposed Transaction.

*Omissions and/or Material Misrepresentations Concerning the Sales Process leading up to the Proposed Transaction*

39.     Specifically, the Registration Statement fails to disclose material information concerning the process conducted by the Company and the events leading up to the Proposed Transaction. In particular, the Registration Statement fails to disclose:

a. Whether a committee of independent directors was created to run the sales process, and if so, the composition and powers of that committee. If no such committee was created, the Registration Statement fails to provide adequate explanation behind such a decision;

b. Whether the confidentiality agreements entered into by the Company with Morphogenesis differed from any other unnamed confidentiality agreement entered into between the Company and an interested third parties;

c. All specific conditions under which any standstill provision contained in any entered confidentiality agreement entered into between the Company and potentially interested third parties throughout the sales process, including Morphogenesis, would fall away; and

d. Adequate and complete disclosure of communications regarding post-transaction employment during the negotiation of the underlying transaction must be disclosed to stockholders.

*Omissions and/or Material Misrepresentations Concerning CohBar Financial Projections*

40.     The Registration Statement fails to provide material information concerning financial projections for CohBar provided by CohBar management to the Board and Ladenburg

and relied upon by Ladenburg in its analyses. The Registration Statement discloses management-prepared financial projections for the Company which are materially misleading.

41. Notably the Registration Statement reveals that as part of its analyses, Ladenburg reviewed, "certain internal financial analyses, including the cash burn model over the next year, projections as to cost and expenses and whether concurrent capital raised would sufficiently cover select programs, reports, preliminary internal market opportunity assumptions and other information concerning Morphogenesis prepared by Morphogenesis, which were further revised by CohBar and utilized per the instruction of the CohBar management team."

42. The Registration Statement should have, but fails to provide, certain information in the projections that CohBar management provided to the Board and Ladenburg. Courts have uniformly stated that "projections … are probably among the most highly-prized disclosures by investors. Investors can come up with their own estimates of discount rates or [] market multiples. What they cannot hope to do is replicate management's inside view of the company's prospects." *In re Netsmart Techs., Inc. S'holders Litig*., 924 A.2d 171, 201-203 (Del. Ch. 2007).

43. Significantly, the Registration Statement fails to provide any projection analyses, to the detriment of Plaintiff and other shareholders.

44. The Registration Statement also fails to disclose any material projection data for Morphogenesis, preventing Plaintiff from being fully informed as to the nature of the Proposed Transaction and preventing her from making a fully informed decision on whether to vote in favor of the same.

45. This information is necessary to provide Plaintiff, in her capacity as a Company stockholder, with a complete and accurate picture of the sales process and its fairness. Without

this information, Plaintiff is not fully informed as to Defendants' actions, including those that may have been taken in bad faith, and cannot fairly assess the process.

46. Without accurate projection data for CohBar being presented in the Registration Statement, Plaintiff is unable to properly evaluate the Company's true worth, the value of the merger consideration, the accuracy of the Ladenburg's financial analyses, or make an informed decision whether to vote in favor of the Proposed Transaction. As such, the Board has violated the Exchange Act by failing to include such information in the Registration Statement.

<u>Omissions and/or Material Misrepresentations Concerning the Financial Analyses by Ladenburg</u>

47. In the Registration Statement, Ladenburg describes its fairness opinion and the various valuation analyses performed to render such opinion. However, the descriptions fail to include necessary underlying data, support for conclusions, or the existence of, or basis for, underlying assumptions. Without this information, one cannot replicate the analyses, confirm the valuations or evaluate the fairness opinions.

48. With respect to the *Analysis of Selected Publicly Traded Companies*, the Registration fails to disclose:

   a. The specific utilized reference range of implied total enterprise values, and the specific reasoning for choosing the 25th and 75th percentile as the said range.

49. With respect to the *Analysis of Selected Initial Public Offering Transactions*, the Registration fails to disclose:

   a. The specific utilized reference range of implied total enterprise values, and the specific reasoning for choosing the 25th and 75th percentile as the said range.

50. With respect to the *Analysis of Selected Precedent M&A Transactions*, the Registration fails to disclose:

a. The specific date on which each precedent transaction was announced; and

b. The specific utilized reference range of implied total enterprise values, and the specific reasoning for choosing the 25th and 75th percentile as the said range.

51. Additionally, it does not appear that Ladenburg performed any in depth analysis of value for Morphogenesis such as a discounted cash flow valuation and provided only comparative analyses, rendering the information provided to Plaintiff less useful in determining the value of the Proposed Transaction as a whole and consequently, whether or not they should vote in favor of it.

52. Finally, it does not appear that any valuation analyses were done for the Company or the Pro-Forma entity.

53. These disclosures are critical for Plaintiff to be able to make an informed decision on whether to vote in favor of the Proposed Transaction.

54. Without the omitted information identified above, Plaintiff is missing critical information necessary to evaluate whether the proposed consideration truly maximizes her value and serves her interest as a stockholder. Moreover, without the key financial information and related disclosures, Plaintiff cannot gauge the reliability of the fairness opinion and the Board's determination that the Proposed Transaction is in her best interests as a public CohBar stockholder. As such, the Board has violated the Exchange Act by failing to include such information in the Registration Statement.

# FIRST COUNT

## Violations of Section 14(a) of the Exchange Act

### (Against All Defendants)

55. Plaintiff repeats all previous allegations as if set forth in full herein.

56. Defendants have disseminated the Registration Statement with the intention of soliciting stockholders, including Plaintiff, to vote in favor of the Proposed Transaction.

57. Section 14(a) of the Exchange Act requires full and fair disclosure in connection with the Proposed Transaction. Specifically, Section 14(a) provides that:

> It shall be unlawful for any person, by the use of the mails or by any means or instrumentality of interstate commerce or of any facility of a national securities exchange or otherwise, in contravention of such rules and regulations as the [SEC] may prescribe as necessary or appropriate in the public interest or for the protection of investors, to solicit or to permit the use of his name to solicit any proxy or consent or authorization in respect of any security (other than an exempted security) registered pursuant to section 78*l* of this title.

58. As such, SEC Rule 14a-9, 17 C.F.R. 240.14a-9, states the following:

> No solicitation subject to this regulation shall be made by means of any proxy statement, form of proxy, notice of meeting or other communication, written or oral, containing any statement which, at the time and in the light of the circumstances under which it is made, is false or misleading with respect to any material fact, or which omits to state any material fact necessary in order to make the statements therein not false or misleading or necessary to correct any statement in any earlier communication with respect to the solicitation of a proxy for the same meeting or subject matter which has become false or misleading.

59. The Registration Statement was prepared in violation of Section 14(a) because it is materially misleading in numerous respects and omits material facts, including those set forth above. Moreover, in the exercise of reasonable care, Defendants knew or should have known that the Registration Statement is materially misleading and omits material facts that are necessary to render them non-misleading.

60. The Individual Defendants had actual knowledge or should have known of the misrepresentations and omissions of material facts set forth herein.

61. The Individual Defendants were at least negligent in filing a Registration Statement that was materially misleading and/or omitted material facts necessary to make the Registration Statement not misleading.

62. The misrepresentations and omissions in the Registration Statement are material to Plaintiff, and Plaintiff will be deprived of her entitlement to decide whether to vote her shares in favor of the Proposed Transaction on the basis of complete information if such misrepresentations and omissions are not corrected prior to the stockholder vote regarding the Proposed Transaction.

## SECOND COUNT

### Violations of Section 20(a) of the Exchange Act

### (Against all Individual Defendants)

63. Plaintiff repeats all previous allegations as if set forth in full herein.

64. The Individual Defendants were privy to non-public information concerning the Company and its business and operations via access to internal corporate documents, conversations and connections with other corporate officers and employees, attendance at management and Board meetings and committees thereof and via reports and other information provided to them in connection therewith. Because of their possession of such information, the Individual Defendants knew or should have known that the Registration Statement was materially misleading to Plaintiff in her capacity as a Company stockholder.

65. The Individual Defendants were involved in drafting, producing, reviewing and/or disseminating the materially false and misleading statements complained of herein. The Individual

1  Defendants were aware or should have been aware that materially false and misleading statements
2  were being issued by the Company in the Registration Statement and nevertheless approved,
3  ratified and/or failed to correct those statements, in violation of federal securities laws.  The
4  Individual Defendants were able to, and did, control the contents of the Registration Statement.
5  The Individual Defendants were provided with copies of, reviewed and approved, and/or signed
6  the Registration Statement before its issuance and had the ability or opportunity to prevent its
7  issuance or to cause it to be corrected.

66.  The Individual Defendants also were able to, and did, directly or indirectly, control the conduct of CohBar's business, the information contained in its filings with the SEC, and its public statements.  Because of their positions and access to material non-public information available to them but not the public, the Individual Defendants knew or should have known that the misrepresentations specified herein had not been properly disclosed to and were being concealed from Plaintiff and Company, and that the Registration Statement was misleading.  As a result, the Individual Defendants are responsible for the accuracy of the Registration Statement and are therefore responsible and liable for the misrepresentations contained herein.

67.  The Individual Defendants acted as controlling persons of CohBar within the meaning of Section 20(a) of the Exchange Act.  By reason of their position with the Company, the Individual Defendants had the power and authority to cause CohBar to engage in the wrongful conduct complained of herein.  The Individual Defendants controlled CohBar and all of its employees.  As alleged above, CohBar is a primary violator of Section 14 of the Exchange Act and SEC Rule 14a-9.  By reason of their conduct, the Individual Defendants are liable pursuant to section 20(a) of the Exchange Act.

WHEREFORE, Plaintiff demands injunctive relief, in her favor and against the Defendants, as follows:

A.  Enjoining the Proposed Transaction;

B.  In the event Defendants consummate the Proposed Transaction, rescinding it and setting it aside or awarding rescissory damages to Plaintiff;

|   |   |
|---|---|
| 1 | C.     Directing the Individual Defendants to exercise their fiduciary duties to disseminate a Registration Statement that does not contain any untrue statements of material fact and that states all material facts required in it or necessary to make the statements contained therein not misleading; |

C.	Directing the Individual Defendants to exercise their fiduciary duties to disseminate a Registration Statement that does not contain any untrue statements of material fact and that states all material facts required in it or necessary to make the statements contained therein not misleading;

D.	Awarding Plaintiff the costs of this action, including reasonable allowance for Plaintiff's attorneys' and experts' fees; and

E.	Granting such other and further relief as this Court may deem just and proper.

## DEMAND FOR JURY TRIAL

Plaintiff hereby demands a jury on all issues which can be heard by a jury.

Dated: July 13, 2023

BRODSKY SMITH

By: *Evan J. Smith*
Evan J. Smith, Esquire (SBN 242352)
esmith@brodskysmith.com
Ryan P. Cardona, Esquire (SBN 302113)
rcardona@brodskysmith.com
9595 Wilshire Blvd., Ste. 900
Phone: (877) 534-2590
Facsimile (310) 247-0160

*Attorneys for Plaintiff*